This is our third day of oral arguments using this medium. Appreciate your patience in the participation. We have three cases to be argued this morning. The first case is United States v. Daniela Gozes-Wagner. We have Mr. Keller leading off and saving some rebuttal, then Kenneth Starr joining us, Ms. Amicus, and then the government will follow. Judge Dennis, Judge Haines and I are ready, so Mr. Keller, you are up. Thank you, Judge Stewart. May it please the court, Daniela Gozes-Wagner's 20-year, $15 million sentence is unconstitutional and unreasonable. I'll start with the trial penalty and substantive unreasonableness arguments, and then I'm Starting with the trial penalty and substantive unreasonableness arguments, three key points make this a unique outlier case, distinguishing it from all the cases cited by the government. First, the government affirmatively conceded that the four Russian co-defendants were this conspiracy's kingpins, to use the government's word. They were more culpable than Daniela, a single mother with health problems who innocently joined the clinics initially and had no other criminal history. Second, Daniela's 20-year sentence was four times greater than the five-year sentence for Voronov, the higher-ranking third-in-command who did not cooperate with the government. Third, the district court's sole explanation for this massive sentencing disparity was that the kingpins pled guilty while Daniela, quote, exercised the constitutional rights that she has in the United States to plead not guilty, unquote. That is a classic example of a trial penalty that is a constitutional violation to base a sentence on. So in this- Okay. And Tara, let me ask you this. I understand that you're representing your client, you want your client to prevail, and I respect that. But as you're well aware, when we write an opinion, it has impact on future cases. You're also well aware that prosecutors routinely reach deals, if you will, with people when they plead guilty, and that can result in lower maximum sentences, which is what we have here. What is it that you want us to say that would be consistent with the fact that we have thousands of cases where co-defendants get a lower sentence because they have a lower maximum sentence because they pled guilty? Yeah, I think what this court can say in recognizing that this is a unique outlier case in that you have the government making an affirmative concession that the defendant on trial has less culpability than others who are not on trial, who are the recognized kingpins for the same conduct. So in other circumstances where the government may have other reasons as to why charges would be being dropped or added, and there's no concession, and the government is arguing about the relative culpability of the defendants, all of those cases would not be a situation like this where the government is coming into court, it's telling the jury that Daniella had a mid-level role. The kingpins had more culpability. It's not as if the government was saying, well, Daniella was the only one that had anything to do with count two and money laundering. Quite the opposite. But you're saying that a prosecutor... No, no, follow up. Go ahead, Judge Stewart. I... No, no, no. Follow up on your question. Go ahead. Okay. You're saying that a prosecutor going forward will not have the discretion to charge a higher, so a higher ranking, if you will, in the conspiracy, a higher ranking person with a lower charge, a lower maximum sentence available if they plead guilty, if they are also leaving in place somebody lower ranking who is being charged with something that has a higher maximum. So we are changing prosecutorial discretion is what you're asking us to do based on the relative of what the person did. No, Judge Haynes, I don't believe that's correct, and here's why. Under 18 U.S.C. 3553A6, sentencing disparities need to be addressed by the district court, and when the government is coming to court and saying, and making an affirmative concession that others are more culpable, that has to be addressed in sentencing, and here it wasn't. And here, the other thing about this case, of course, is the district court statements in response to defense counsel raising the sentencing disparity comment were that Daniella exercised her constitutional rights to go to trial. There was no valid explanation. The government now has pointed to, well, maybe the two counts versus the one count could explain it, but here, when you have a concession that the kingpins were more culpable, and the government didn't clear the kingpins of money laundering, quite the opposite. It dropped count two when they pleaded guilty, only to add that count when Daniella did not. But again, the fact that the district court made the statements in response to that, that were an invalid explanation, that alone is a basis for reversal, putting aside any of the... Let me ask you this, because I'm still not sure you respond to Judge Haynes' question in terms of what the bright line is, but we'll come back to that. Whether it is supposed to be that in any case where a judge says what this judge said, then by definition, that's going to obviate any other factors and going to be reverse glare per se. I'm not sure you're saying that. Just hold the thought. Now, in terms of Outlier, it's certainly not every case, but in many cases, with all these co-defendants, the same judge is handling the other cases, and so the judge is aware of the other pleas and so forth that have gone in. For reasons that are beyond me, this record just says, quote, by agreement of the judges, these defendants were handled by a variety of different judges, and not Judge Hittner here. And I'm not criticizing that. I'm just saying, if we're talking Outlier, it just strikes me here, the judge didn't take the pleas on any of these other people. If I'm wrong, you can tell me. But my question then with that is, I don't know that we have before us, for example, an objection to the PSR, and so my question is, did the PSR lay out these various circumstances, vis-a-vis co-defendants, all the matters that you're urging, such that the judge would have been aware of that, and part of the calculus, and not having said that, then we say, well, the judge didn't consider it. He said she exercised her right to trial. Therefore, the only basis is the trial penalty. You see where I'm going with it? So I'm trying to see, I don't see there's, I don't know what's in the PSR. I haven't read it, but I know how sentences go. And so if the judge is handling for the co-defendants, you know, took the pleas, et cetera, knows what the others are facing. But in this case, the judge has this defendant in a vacuum. One defendant who goes to trial knows that other co-defendants pled, but it's not the same as having taken those pleas and knowing the spares. You follow? I mean, that's a long windup, but do you see where I'm going? I'm trying to see what else is in the predicate of what the judge knows when he makes the sentence and says what he says. Judge Stewart, yes. And the objections were preserved. In the record at page 1233, defense counsel said, quote, sentencing disparity is going to be one of the main themes, unquote. And defense counsel repeatedly came back to sentencing disparity and cited case law. The sentencing memo, this is in the record at 1416 to 22. And then at the sentencing hearing, record 1231 to 34, defense counsel repeatedly brings up this sentencing disparity between the co-defendants. And even when the district court responds that, well, the co-defendants pled guilty, defense counsel responds by citing sentencing disparity case law. And in response to that, the district court made its bottom line. She exercised her constitutional rights. All right, but Mr. Keller, they had not been sentenced at that point. But the point was, Voronov, for example, got 100% of what he could get based on what he pled guilty to. And Shira Ferenko got 60%. Ms. Gossett-Wagner got 66% of what she pled guilty but received the sentence for. So when you're talking about a sentence disparity, you have to look at what was the maximum that could have been given. And Voronov got the maximum that he could get. And it was after the sentencing of Ms. Gossett. So I'm struggling a little bit with the notion that this is a disparity. Perhaps Judge Hittner, had he been able to sentence Voronov with no maximum, would have given him 40 years. But he didn't have that option, one, because he wasn't doing the sentencing, as Judge Stewart pointed out, but two, because of the statutory maximum. So how do you think, S-Y-N-C, all of that together? So under 18 U.S.C. 3553-86, it's not necessarily that you're looking at a disparity between what would the statutory maximum be and doing a proportionality calculus there. Rather, you're looking at what were the conduct committed by various defendants and is there a sentencing disparity between the conduct that various defendants did. And here there absolutely was. And the only explanation given was that Daniella went to trial and the Kingtons pled guilty. Yeah. And I agree. Judge Hittner could have been more fulsome with what he said. But is that shorthand for what I'm saying? They pled guilty and their maxima are much lower than her total maxima. And so it's just when you're looking at a disparity, you have to look at the big picture, the full picture. It's not only the years you got. It's what did you get that you could have gotten. And I don't see how more or not could have gotten a higher sentence. Maybe I'm missing something. Explain that if I can. Ma'am, hold on for your answer. Give Mr. Keller an additional five minutes. You can put five on the other side if needed. We've asked him a lot of questions, but we've got a lot going on. So take him back to five minutes. Now go ahead and answer Judge Haines' question. Thank you, Judge Stewart. So Voronov, under the plea agreement, could only get five years. But that does come back to the point, though, in the trial penalty calculus and in examining Daniella's sentence, pushing the analysis back and saying, well, under the terms of the plea agreement, Voronov can only get five, but Daniella could get a lot more. That still doesn't answer the fact of what was the basis for Daniella's sentence. Voronov did not cooperate with the government. The district court didn't say that Voronov cooperated. And the government's brief conspicuously does not say that Voronov cooperated or that there was any 5K agreement. So whatever the explanation be for why Voronov's sentence was capped, the government still has not provided, other than the fact that he did, in fact, plead guilty. But exercising one's constitutional right versus – Well, yeah, but now you're getting into the prosecutorial discretion I began the discussion with. I agree that prosecutorial discretion is not unfettered, but it is an important part of this. And Judge Huebner had nothing to do with that. There's no indication that he inserted himself into these guilty pleas or forced them or anything like that. And so having pled guilty for whatever reason, whether the government thought they couldn't prove a bigger case, whether they were having other issues, whatever reason they worked out that deal, Voronov got 100% of what he could have gotten. And so – and Ghosis-Wagner did not. She had a higher statutory maximum. I just don't see how we can ignore that and how we can say the court must inject itself into the prosecutorial discretion if that results in somebody who seems to have done worse stuff getting a lower sentence. That's not what A6 said. I'm really struggling with that, so help me with that. So first of all, of course, you have the trial penalty argument and the express comments, but putting that aside and just coming to the sentencing disparity, I really do think what the difference here in the outlying situation here is you have the government affirmatively conceding the kingpins, that they were more culpable for the same conduct. And it is that concession, not simply the fact that there were plea agreements and there weren't. And then when you couple that with the fact that – what was the explanation here for why Daniella, a single mother with no other criminal history, was getting 20 years and a $15 million sentence when the acknowledged kingpins were getting significantly less even with plea deals? There was no explanation of that. That itself would be a procedurally unreasonable aspect. We think it's substantively, but it's certainly procedurally when the only explanation given for this sentence is the fact that Daniella went to trial. Now, let's talk about the sentencing guideline. I find it a little hard to believe that Judge Knitner, 15 years after Booker, and who cited Booker, didn't know about Booker, and he actually varied it down from the sentencing guideline. So when we look again at how big her sentence was, and it was big, it is below the sentencing guidelines, which you are not challenging the calculation of the guidelines. You're challenging how they were applied, perhaps, but not the calculation. So he actually varied downward, and so she got a lower sentence than she should have under the guidelines. Yes, the government asked for 20 years, and that's the sentence that the district court imposed. Then we cited the Freeman case from the Supreme Court that says that when the sentencing range is used as a beginning point, that the guidelines are in a real basis for that sentence. But putting aside that procedural argument, the procedural argument that a court needs to directly address an argument raised by defense counsel here, the sentencing disparity argument with the main theme defense counsel raised, and the only explanation given was Daniella exercised her constitutional rights and the Kingpins pled guilty. That's not a valid explanation, whether that's a trial penalty error or whether that's a procedurally unreasonable error is an insufficient explanation for the sentence under GAUL. Either way, that would be error that would require reversal of the sentence. Do you think GAUL stands for that proposition? I'm just wondering what case you're citing for that, because we have judges all the time who don't give a long explanation of what they're doing. Actually, this is one of the longer sentencing hearings. Not the longest, but it's a long sentencing hearing compared to many. If we're going to say you've got to address every single point that's made everywhere in the objections, in the sentencing hearing, and so forth, then a lot of affirmances we've done have to be undone. Again, you have to be understanding we're looking at this case as very important, justice in a particular case is number one. We also have to look at our precedent and the precedent we create by this. Judge Hayes, this court in Mondragon, Santiago, said that when defense counsel raises an argument, it must be, quote, directly addressed, unquote, by the district court. Here, this isn't just an outlier comment. This was the main theme defense counsel was presenting. This was a significant concession by the government that was repeatedly invoked at trial, that Daniella had a mid-level role, that the co-defendants were the kingpins, that the wide disparity in amounts gained showed the relative role. The kingpins were raking in millions. Daniella was making the typical equivalent of an annual salary. When you have those concessions by the government and you have defense counsel bringing that argument to the district court, and the district court's only explanation is she went to trial and exercised her constitutional rights while the kingpins pled guilty, that is an insufficient and unconstitutional basis for a sentence. All right. So your takeaway would be the government's key concession, vis-a-vis, plus the trial judge's statement, vis-a-vis they pled guilty, putting those two right up front, those would be the drivers, not pushing back any other arguments you make, but those would be the bright lines that make this an outlier in the sense of the reversal that you're asking for. Do I understand that correctly? That's right, Judge Stewart. In a nutshell. That's right. Yes. Those are the two most important factors in this case. All right. Got you. Well, you've reserved your rebuttal time, so I want to make sure I sort of had at least a cap on your initial. You've reserved your rebuttal time for us. Thank you. All right. Thank you. For the amicus, Mr. Starr? Thank you, Judge Stewart. And may it please the court, in light of what we have heard thus far, what I would like to do is to focus on the judge's responsibilities, not intruding whatsoever into prostitutorial discretion, nor requiring an administrative agency type, wholesome explanation. Rather, let's, if the court pleases, return to exactly what Congress had in mind and directed in the Sentencing Reform Act of 1984, passed by an overwhelming bipartisan majority in both houses and signed into law by President Reagan. Now, the overarching theme of the sentencing guidelines effort by the judge is to, I quote, a sentence sufficient but not greater than necessary. So one of the quarrels that we as the amicus have around the country is that there are numerous mitigating factors. There were, I'm sorry, was I being questioned? I was getting feedback. I'm sorry. There were numerous mitigating factors that the judge did not address whatsoever. And I think he was obligated to do that under the Supreme Court President to provide a reason. What about Neva? That was the case that came to my mind when I started reviewing this case. And that was 900 months. So even if you say that Neva did four things, you know, she got a sentence that was, I don't know, I'm not good at math, but quite a bit higher than the sentence that Ms. Gozic-Wagner got. Yes. There may be other cases which other facts and the judge, the sentencing judge has responsibility. Instead of the totality, here is a fundamental quarrel, Judge Haynes, that we had with what the judge said, not what he may know that of course he's read Booker and its progeny and the like. I'm not quarreling with that, but we take him at his word and what the transcript shows to us as the meeting is that this judge was heavily relying on the guidance, that he was not simply using the guidelines as a starting point. But let's hear what the judge had to say. A judge needs to stay within the guidelines. Now he didn't say much, but that's pretty clear. And then he also said, but the guidelines is generally where it's holding right now. That can't be correct. Okay, but Mr. Starr, if you look at Molina Martinez, which is a very recent case reversing us on the fifth circuit, it says that the guidelines are the benchmark. They anchor the district court's discretion and they're the lodestar. So not only do they anchor the description, they also lead the ship when it leaves. So that's pretty high praise for the guidelines. And it's hard to criticize for recognizing that high level of respect for the guidelines that the Supreme court has given it. Benchmark lodestar anchors the discretion. Wow. Those are three strong words. My response is there's still an obligation to consider the 35, 53, all of them, including whether in fact there was an alternative to this particular sentence. The government wanted 20 years. I refer to Mr. Keller in terms of the trial penalty, but that is the way we do read this record that there was in fact in trial penalty imposed. That's impermissible as a matter of constitutional law, as well as an interpretation of the guidelines. What we do know is that when the government charged count two, which was not in the original indictment, it had discretion to do that, that had a powerful engine moving her sentencing range from essentially three years, 30 months, 37 months. And it increased that by 10 fold. Why? Because of the decision that was not made at the outset to add count to When we around the nation look at what happened here, we believe that the end result is an extreme sanction that does not serve the purposes of the sentencing guidelines, which is you do that, which is sufficient, but not beyond that, which is sufficient. You don't go beyond sufficiency. And with all due respect to the very experienced judge, he never addressed this. I must do this because you, as a first time offender, as a single mother, and with the terrible, and by the way, the PSI got it totally wrong, not totally, but very wrong in some very important respects in terms of the medical condition. The judge had to look at that and he did not. I'm not making a jury argument. I'm making a sentencing guidelines argument, but the judge was obligated to look at the totality. When you look at the sentencing guidelines, discussion of the judge, when you hear him say twice, they entered a guilty plea. They were smart. You exercise your constitutional right. I think this court should have zero tolerance for a suggestion, zero tolerance that the invocation of a precious constitutional right to result in a penalty. I apologize. I see my time is up. All right. Thank you. I'll let you do as I often do make a concluding declarative sentence short of semicolons and clauses, which is hard with your background, but just to make a concluding point, but in a declarative sentence, go. This was an extreme sanction and outlier for a nonviolent first time offender who was punished for invoking her right to jury trial. All right. All right. Well, let me ask you this. When you say the judge did not take into account, quote, the mitigating factors, you're obviously having read the transcript noting that he said, you know, he read all the letters and so on and so forth. I mean, you're spotting that, but you're saying these other factors, more personal to her. The thing is that, is that what you're honing in on? Absolutely. To his credit. He read those, the outpouring. He listened to the letters. He listened to the daughter's testimony. There's no question. He did not close his ears to it, but in doing his job under the sentencing guidelines, he failed to address these very important factors, especially the sufficiency of the sentence. Is it more than necessary? And this, so those of us around the country that have been watching this case was wildly more than necessary to indicate the ends of justice. All right. And one other question for me is just, you said somewhere in there that the PSR did not look at the totality of the mitigating factors. So the factors that you just alluded to, are you saying, A, aren't in the PSR, or B, they're in there and the judge didn't look at it and pay attention to it? I'm saying, let me be very specific. The PSR was incorrect with respect to her kidney condition and saying generally she had no health problems. She has a ton of health problems, and she did at the time. Okay. All right. Got it. That helps me. Thanks for the clarity. All right. Appreciate it. All right. Let's shift to the government. Ms. Barry, you're up. May it please the court, Loretta Berry for the United States. There is no dispute in this case that sufficient evidence supports the two count jury conviction for healthcare fraud conspiracy and money laundering conspiracy. And there's no dispute that the guidelines were correctly calculated in this case. Though this does not challenge her obstruction of justice, her managerial role, or the amount of loss. Judge Hittner understood that the guidelines were discretionary, and he departed below the guidelines, issuing a 3553A seven-year downward variance. So under Gaul, this court applies an appellate presumption of reasonableness, this below guideline sentence. So the real dispute in this case, your honors, is Ghosis is unhappy with the length of her sentence. And she argues the sentencing disparity exists with her co-defendant. That is the crux of the argument that she made before the district court at record 1231. Defense counsel stated there's a sentencing disparity. I quote, Judge Hittner responded at length record 1232 to 1234. He stated that sentencing disparities are for those that are on the same footing. And she was not on the same footing as her co-defendants because they pled guilty to one count with lesser statutory maximum. This was a correct statement of the law under wagons back and Candia. There's absolutely no evidence on plain error review that judge Hittner threatened her, coerced her, or was involved in the plea of this case. And under Johnson. Let's stop there. You're arguing this is plain air. I mean, why? I mean, I read this looks to me like fence. Counsel is, is urging their objections. Maybe more fully, you know, poured out here, but I mean, how in the world is this plain error? Let me tell you, your honor. Under Johnson and under divine, the two concepts of a trial penalty is entirely different than a substantive reasonableness sentencing disparity argument. Those are two separate things. And all defense counsel argued before the trial court was a sentencing disparity, which is a substantive reasonableness argument. Under Johnson and divine this court's precedent holds that sentencing disparity is absolutely not an unconstitutional trial penalty. No objections were raised to judge Hittner's comment as being an unconstitutional trial penalty, a brief note about the prosecutorial discretion. The prosecutors superseded the indictments were very well seasoned, respected prosecutors. There was no 12 B three motion raising improper superseding of the indictment. Therefore that issue is way on appeal under Johnson, but in any event, ample evidence exists on this record for superseding the indictment. The testifying agent agent, Marlo testified at record five 72 to five 74, that the investigation was ongoing after the initial edition, after the original 2014 indictment, he do it. No small part to the obstructionist conduct of go this Wagner, which she did not challenge on appeal. That is the very nature of these sham clinics that were revolving so quickly. Every time Medicare had a red flag against the clinic, it would close down and open under a new name. And she was integral in that part. And in those efforts, she kept a running log of the clinic's name. She hired the seat warmer to sit at the clinic and appear to be legitimate. Let me ask you, we're familiar with that. You've heard a council opposite say three times. And I asked him at the end, he says the government's concession, quote unquote, vis-a-vis these other people in their roles. We read the record. We know the setup of the fraud is, you know, where she was and so forth. We're familiar with that. This council says the government's concession is key. I wrote it down four times here. And I asked him in summation that that plus the trial judge's words are what sink this ship, uh, as a matter of law, you know, not withstanding whatever you say about plain error, but it just sinks the ship on that. So what about this concession and the probative worth of it through all this, particularly vis-a-vis what you're, you're, you're arguing now. Yes, your honor. Let me explain the King pin structure. This was a multi-state massive conspiracy testimony for the investigating agent. Was that agent Marla? Oh, let me, let me stop. I'll let you do that, but I want you to answer the question I asked you first. And I'm asking you about concession. I know you want to explain the hierarchy to me. And if you have time, you can do it. I want to know fence council says the concession that this is a bright light that makes a difference here in this outlet kid that the concession the government makes is a key piece of this. And I want you to comment on the concession first before you then, you know, The concession is that they were King pins and the overarching conspiracy. They were King pins in Louisiana, Chicago, Los Angeles, Houston. They were King pins over the whole overarching conspiracy, but as to the Houston clinics, the 20 plus clinics, which is the only thing that this case is focused on as to those clinics, her role was major. So they might've been working pins as to the entire operation, your honor, which had investigations going on in Chicago. As I mentioned, Louisiana, LA Houston, but in the Houston offices, what may be the vital success was those as Wagner's managerial role, the steps that she took. And that was the focus of this prosecution. So she was not a King pin in the entire multi-state operation, your honor, but as to Houston, the focus of this indictment, she absolutely was vital to the prosecution and vital. She was vital to the success of these clinics. In fact, she conceded your honor that she was in charge when the February 2015 search warrant was executed. She conceded that to agent Smith records by 60. One of the employees testified that Voronov told her, if you have any issues in the Houston clinics, any concerns, any problems, she does this Wagner that was Solomon's testimony. Judge Hittner did not expressly said her conduct wasn't marginal, but I think that it is clear that it was not incidental. She wasn't just someone making photocopies for the King pin, but the question is, what do we do about judge Hittner's constant references to what she went to trial? They pled guilty. I mean, he used different phrasing here and there, but that's the summation of what he keeps saying. How do we allow that to kind of stand? I mean, that kind of was the ultimate point. And this teller may, how do we allow that to stand? Well, your honor, you have to look at the context of the entire discussion. You cannot just isolate comments and that's what the court in Niva held. You can't just isolate one or two comments in Niva. It was a different context because there they are. The appellant argued that the court didn't understand that the guidelines were discretionary. And there were a few comments that were made, but the same principle applies here. You have to look at the objection, your honor. And the objection was simply sentencing disparity record 1231. And then the court throughout that theme of the sentencing disparity argument kept referring back to the plea agreements, which is exactly what the sentencing disparity goes to and what Congress intended under 35 53 E and 35 K 1.1. I had with Mr. Keller pointing out that Voronov got the maximum that he could get. You would agree with that, that that was a factor to look at that the maxima are different. If they had all had 30 years maximum and all of the kingpins got five years and she got 20, we might have a different case. Is that what you're saying? I'm saying you have to look at the individual conduct and I'm sorry. I, are you, can you repeat that question? I'm sorry, your honor. I got a little, I'm sorry. Judge Hintner was focusing on the point that I focused on with Mr. Keller, that whatever you think of these other kingpins, they can't get 30 years. I can't even get 20 because their maxima maxima maximums are lower. And so they are, they have a feeling that the judge can't go past whatever he or she may think about that particular defendant. And so I'm asking what this case be different. If the maxima had been different for the other kingpins, if we were talking 30 years, of course, but if they've been sentenced to five years when the maximum was 30, would that be a different analysis? Not necessarily that you would lose that one, but it would be a different analysis than we have here. Yes, your honor. It would be a different analysis. And this court recognized in Kurt that disparate sentences happen all the time. And these types of white collar crime cases, where co-defendants who are more culpable sometimes do receive lesser sentences. This court recognized that in the Stanford case and in the court case where that was the accountants in that case. But again, under golf Candia Guillermo, the laser Congress approved disparities specifically in the statute and in the guidelines for those that cooperate and substantially assist the United States and those that do not. I'd like to mention that he, he administered, he oversaw the Houston administration, but he was not there day to day. The investigating officer testified that he was not in the offices every single day. Like those, this Wagner was again, as I mentioned, so a mom could testify that if you have any issues, we're not told her to go to Daniela. So he fled to a three 71, jumping back a little bit to shiver, who was the second in charge of this entire multi-state operation. He provided the United States substantial assistance and a five K 1.1 it deals, but the United States, but the court can look to see if he identified doctors, patients to substantially help in the investigation. Roski has not yet been sentenced. He's still participating with the United States. And I'd like to point out that does this Wagner herself was offered many times. We deal the same types of plea deals that her co-defendants were, but she consistently refused them. In fact, the United States took the unprecedented step of offering her a five K 1.1 departure after the jury found her guilty. That was at 40 seconds before 88 and she still refused it. It's very important to understand that this downward variance that judge Hittner issued what he considered and he painstakingly considered the PSR. He mentioned that he considered the objection. He considered the memoranda and the 80 plus character letters written on her behalf, including the letter from the olive Institute represented here today. Ms. Barnes, let me ask you this. I understand, you know, having, I was not a criminal district judge, but having sat at the district judge, I know that sometimes in the course of the hearing, the words don't come out perfectly as you'd like to happen dramatically, et cetera, et cetera. So I get that, but how do we determine when a judge is holding it against somebody that they went to trial, that would clearly be wrong versus they're using language that is slain for something else like the maximum we've been talking about. How do we make that determination where we just have the cold record and the words that we have? Well, your honor, you have to look at the cases that we focused on in our brief. Johnson, excuse me. Um, you have to look at the Johnson case, the divine case, the cases I mentioned in my brief that were the comments made by the district court were so egregious. And we do not have that here because they were in response to a sentencing disparity argument. And I would urge the court to take a look at Johnson and divine because those two cases explain the difference. And there's a huge difference between telling someone I'm going to penalize you because you went to trial, you rolled the dice, you came up snake eyes versus someone arguing your honor, there's a sentencing disparity here with my co-defendant and judge hitting her, telling them, but your co-defendants pled guilty. I'm just, I'm not saying. And in fact, I'm not commenting on anyone's right to go to trial. All of that. Let me ask you this. We have plenty of cases and you know, this where even in the rule 11 context, judges get thousands of guilty police take thousands of, but in given case, judge gets off script. Having done it innumerable times don't, you know, fulfill the perfection of the rule 11. You know, we reverse them. We say the guilty plea is so important to the process. It's got, there's a way it's to be done. You know, we reverse it. We have sentences where judges forget the thousand cents, plenty of people, but they don't allow for allocution, even though you could piece it together. They probably meant to do it or whatever the case is, judge ain't say when you do a lot of these, but when the record is clear, we say we reverse no allocution, even though we might be able to define or figure out whatever the drill is. And we send it back. So my point is that the argument from the other side, pretty heavy. Yeah. You know, maybe you can piece together a whole lot here, but he said what he said is your chain said, maybe not as he said, what he said, said, what he said, said, what he said, said, what he said. So why is it? And I'm not equating the rule 11 guilty plea or the allocution, but my point is just coming to given the constitutional argument that's being put forth, that's, you know, right here, front and center, you know, why is it? And you know, and you represent United States and you know, when I was a judge and even now when somebody comes in and says, I'm XYZ and I represent the United States, it means more than we ought to win. So given the constitutional implications and the right to go to trial, et cetera, why isn't it enough here with what judge said, not getting his head to say, well, did someone argue we can't countenance a record where that said, blah, blah, blah. And we don't have other explanations for it to reverse. Because your honor, in this case, when you look at what judge Hittner said on the record, he made a correct statement of the law under 35, 53 E Congress approved disparities for those who do not plead guilty and enter substantial agreements and those who do. So when judge Hittner was asked, your honor, there's a sentencing disparity. He made a correct accurate statement of the law. He did not say unlike the other cases that I cited in my brief, he did not penalize her arbitrarily. He did not say I'm going to send this to you simply because you pled guilty. There's nothing like that in this record. He was responding to a sentencing disparity argument. And this court has told time and again, that is a very different argument than penalizing someone for going to trial. Judge Hittner made a correct statement of the law, your honor under Wagenstock and Condia. And you would also have us look at the whole picture, not just one sentence good or bad. Yes. What is he saying? And I think, I think in a way that's the nub we were having to look at if he's saying, well, you didn't plead guilty, so I'm going to stick you or if he's saying, you know, look these people got a good deal because they pled guilty and you didn't get a good deal because you didn't plead guilty. So I've got the sentence maximums. I've got, I've got the sentencing guidelines. I've got, this is the world we're in. I'm going to look at it. So that's exactly right. Determine, because I don't think there's a dispute among counselors here about the law that it's improper to hold it against somebody that they went to trial. And I don't think there's a dispute that it's proper for people to reach deals and plead guilty that maybe they would have gotten a worse deal if they'd gone to trial and been found guilty. It's what do we do with this case justice in this particular case? And your honor, I again, I would refer the court to Niva or Niva said that you cannot cherry pick comments. You have to look at everything globally under the totality and that is exactly what this court should do at records 1232 to 1234. What's your response to the stars argument that the judge did not take into account, uh, Ms. Coles is wagons, you know, personal circumstance or health, et cetera. The matters that he pointed to not the other mitigating family. Everybody can see he read the letters, et cetera. But, uh, you heard that part of the argument he'd made. What's your response? My response to your honor is that the court articulated on the record, every single possible thing that it could have, honestly, under the PS. He said he read the PSR. So if there were objections to the PSR about her medical condition, that was on the Wagner to raise that this court recognized even in Niva, the defendant had metastatic breast cancer and the court still found a 900 month, 75 year sentence was reasonably reasonable. This court went through the objections to the PSR, the memoranda, the sentencing letters and any policy arguments that the olive Institute made. It's important for this court to understand that any fundamental unfairness and the guidelines is addressed with the sentencing commission and with Congress. That's the proper forum. And even the olive Institute recognized that in this letter to judge or referenced at 12, 26, 12, 36, 12, 41, 12, 47, the olive Institute recognized that Congress is the forum to address the record. These five 26 note five of their letter, the court considered the amount of thought that goes this Wagner perpetuated on active acting out of these 22 or 20 plus  minutes. The court stated on the record, there was a $34 million intended loss and a $15 million actual loss. The court weighed that on the record. The court weighed the length of the fraud, the role in the fraud, her vast role in making these success. He weighed all of these factors on the record. Your honor doesn't need to nitpick and say each individual subsection. No, he's not required to do that under Rita because this is a below guideline sentence. And it's clear on the record because he said it, but he, all of the things that he considered, no robotic incantation is required, but the court. Let me ask you there, since you shifted a little bit over on the rest, the other part of the sentence, we didn't get to ask Mr. Keller in the open, but he'll come back, but speak to the, this restitution issue in that part of the, the appeal, the rather hefty amount and wine under these circumstances. There's that issue is before us as well. So what do you say? It's under plain air review number one, your honor, the restitution was only as to, first of all, it's not the loss amount is not being challenged. The restitution amount was only attributed to go to Swagner for her time in the conspiracy. And only attributed to these 20 some odd Houston clinics. That's an incentive to memorandum at 1333. So the court and giving those as well, I know the benefit of the doubt. She argued that she didn't participate until June of 2010, the United States shaved off time that it believed that she was participated earlier than that, but gave her the benefit of the doubt and shaved down the time to the time that she admitted that she participated in the conspiracy. Your honor, the restitution being joint and several is consistent with this court. And she, there is the court considered her financial circumstances as, excuse me, the court was not required to consider financial circumstances and amount of loss under the law, but did so in the repayment schedule. There is no there's no Caroline argument, your honor, because Caroline exists for cases where there is no concert of action here. We have a concert of action conspiracy on both counts of conviction, your honor. So under plain error of view that all of the restitution arguments fail, there's no use of discretion in this case.  This court and Supreme court precedent prohibit this court from replaying the 35, 53 a factors, even if this court were to see or to believe that she should have been sentenced to a lesser sentence. This court should not disturb precedent nearly for those disagreements with her seven year below guideline sentence. If there's no further questions, I respectfully request that the judgment be affirmed. Good change. Just Dennis. Any additional questions of council for the government? All right. Thank you. All right. We're back to you, Mr. Keller. Um, why don't you start off and address a couple of areas? Well, let's just start from the last one on the restitution. Council says plain air review on that. Do you acknowledge that that is plain air?  Oh, that was absolutely preserved. In fact, the district court at 1216 said, quote, there's an objection to responsibility of restitution and the restitution amount attributed to this defendant. Unquote. Objections were made at record 1304 to 1312 in the PSR. So per the spring courts, recent Holguin Hernandez case, this absolutely was brought to the court's attention, whether it was stated in the exact same terms that appellate council has raised it now isn't the issue, but this absolutely was raised. In fact, the district court modified the amount down from 19 million to 15 million. Defense council still objected to that. So all of those arguments are before the court today. And on the restitution and the Paraline point, the point there is Daniella does not have an ability to seek contribution from any co-defendants. That's what Paraline said. That's the longstanding position of the department of justice, that it's somehow being ignored in this case. We pointed to the U S solicitor general's brief in Paraline. We pointed to other DOJ briefs in this court. We pointed to the circuit after Paraline. And for some reason, the government in this case is saying that there is a right to contribution, but there isn't. And that's what is giving rise to a significant constitutional issue on restitution that abrogated this court's Arledge precedent. If I can come back to the trial penalty point and judge Haynes in analyzing the record, and of course you have to take everything into context, but when you have a line in a sentencing transcript, and this is a record 1234, where the council raises Schiforenko and Voronov and Brodsky and the sentencing disparity in the court responds quote, but again, bottom line counsel, she exercised the constitutional rights that she has in the United States to plead not guilty. When you have that as a factor at all in a sentencing, that is invalid. That's unconstitutional. And the best case, if you look at the context of that statement, they had not been sentenced yet. They had pled guilty to crime with statutory maximum lower than hers. At that point, am I missing something on that? I've checked that. No, they had not been sentenced, but they had pleaded guilty in those. Right. He had nothing to compare. It wasn't like they had a 30 year sentence maximum and they got 10 years, et cetera, et cetera. He wasn't comparing to that. So when he says that he's explaining why they have lowered statutory maximum, why isn't that the context to understand the, the statement? I agree. It's not a well-said statement. Totally agree with that. But I'm just, I'm just wanting to be careful in gotcha eating district court judges. While at the same time, I want to be careful and not gotcha in defendants. I agree with that. Absolutely. Judge Haynes. But here, when you have, it's not just about the plea, it's that she, Daniella exercised the constitutional rights that she has. And that is the only explanation for the disparity. Now, if there were some other explanation, the district court didn't give it. And I would point this court to the cases. We cite in our brief at 29 to 35, four other circuit cases that are very similar to this, particularly the Mozzaferro case. And I don't want to be beat on that, but the difference that we're talking about, what was the disparity? It's not in the sentence they got. It's in the sentence they could get. Cause at that point, nobody had been sentenced. Mrs. Goethe-Wagner hadn't been sentenced yet. And the other prior co-defendants had not been sentenced yet. So the judge could only have been looking at the statutory maxima at that point, not what did they ultimately get? No, Judge Haynes, because the plea deal had been entered into at that point, we knew Schifranko at that point was only going to be able to get 10 years. He got six. We knew Voronov and Brodsky were only going to be able to get five. Are you suggesting, sir, are you suggesting, go ahead. I'm sorry. I just wanted to make the point. The plea deal was for a, a crime that had those statutory maxima. That's what I'm saying. And that was what he's comparing because he hadn't been sentenced. Mrs. Wagner yet. We don't know what her sentence is yet. 400 disparity is the maximum. I'm sorry. Go ahead. And judges, I would say the best case against that proposition is the first circuits Mozzaferro case. And we'd also point to the Walker case from the third circuit, the Wiley case from the seventh circuit and the ninth circuit Hernandez case. And Mozzaferro, you had the prime mover with a criminal history. He pleads to one count. He gets 10 years. Mozzaferro, the defendant played a minor role, went to trial on two counts, got 20 years. The first circuit said, we don't even have an explanation there. And it found a trial penalty in reverse here. This record is even stronger for trial penalty because there was an explanation. The explanation was the Kingpins plant guilty and Daniella exercised her constitutional rights. Sorry. Did you have a question? Yeah, go ahead. I did have a question. I just, go ahead. Are you suggesting that judge Hintner should have waited to impose a sentence on this defendant until he saw what the other defense code offenders, what their punishment was. It judges. It would have been within his, his power to do that. In addition to that, though, there would need to be a valid explanation for the sentencing disparity. And when you had a situation like that, where you knew there were going to be other co-defendants who the government said were the Kingpins. And by the way, the government's explanation today, well, the Kingpins, or they were national. Well, that just makes it worse. That, that makes their conduct even more egregious. And here we have a single mother with health problems with no criminal history owed $70,000 in back child support with an ex-husband who is a lawyer. She joins this clinic innocently when this fraud had been going on for three years prior. And against that backdrop, the government's response as well, these Russian Kingpins, they were national. Daniella was just caught up in this in Houston. That doesn't make any of this better. That just makes it even more egregious. All right. There's no questions from the panel. Judge Dennis, judge Haines, additional questions for Mr. Cohen. No, thank you. All right. Thank you. Thank you, your honor. I'll give you, I'll give you your concluding one Senate, no semi-colons. And with the constitution does not permit an exercise of constitutional rights to be a basis for a sentence. And that's exactly what happened here to Danielle. All right. Thank you, sir. Thank you to all council for vigorous and, and very helpful oral argument in the case. The briefing is, uh, enormous. Uh, we'll work our way through it all. And ultimately we will decide the case. Appreciate, uh, the assistance that you've given us this morning. So, uh, that concludes the argument in this case, stay safe and healthy. Thank you. Thank you,